UNITED STATES of America

v.

DONSKY, Morris.

UNITED STATES of America

v.

REINFELD, Herbert.

UNITED STATES of America

v.

GLENN, Leroy.

UNITED STATES of America

v.

ZMIRICH, Michael.

UNITED STATES of America

v.

RIX, Robert.

Appeal of UNITED STATES of America.

No. 87–5029.

United States Court of Appeals, Third Circuit.

Argued May 22, 1987.

Decided Aug. 5, 1987.

Thomas W. Greelish, U.S. Atty., Samuel P. Moulthrop, Chief, Appeals Div. Marion Percell, Asst. U.S. Atty. (argued), Newark, N.J., for appellant.

David L. Harris (argued), Stephen H. Skoller, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., Glenn B. Carey, Abromson & Carey, Newark, N.J., Jeffrey S. Feldman, Livingston, N.J., Michael Critchley, Critchley & Roche, West Orange, N.J., Elmer J. Hermann, Jr., Newark, N.J., for appellees.

Before SLOVITER, BECKER, and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This is an appeal from an order of the district court dismissing the conspiracy count from a multi-count indictment against each of several criminal defendants. We must decide whether the district court, which was presented with a valid indictment and an alleged variance between the government's evidence and the conspiracy charged in the indictment, properly granted defendants' *pretrial* motion to dismiss the conspiracy count at the conclusion of the government's opening statement. We conclude that the district court's dismissal of the single conspiracy count was in error.

### I.

In a thirty-three count indictment filed June 9, 1986 seven defendants—Morris Donsky, Herbert Reinfeld, Leroy Glenn, Michael Zmirich, Robert Rix, Salvatore Vicari, and Herbert Bartsch—were charged with participating in a long-term conspiracy to pay and receive bribes in exchange for influencing the actions of public officials. Defendants Vicari and Bartsch entered pleas of guilty before trial and are not

parties to this appeal. The five remaining defendants were all food inspectors employed by the United States Department of Agriculture.[1]

As inspectors, the defendants were obliged to obtain random samples of the meat products from the production lines of the Leo Keller Meat Processing Plant, and send these samples to a government laboratory for the purpose of determining whether they complied with U.S.D.A. regulations. The indictment charged that each of the five defendants, rather than obtaining random samples of the meat products being processed at the Leo Keller plant, instead accepted bribes and submitted specially prepared samples of meat. Count One of the indictment charges the five defendants with involvement in a single conspiracy. Counts Two through Thirty-Three, not in issue on this appeal, charge the individual defendants with separate substantive bribery offenses under 18 U.S.C. § 201.

Prior to the commencement of trial before the United States District Court for the District of New Jersey, the defendants moved to dismiss the indictment or to sever the conspiracy count. The thrust of their motion was that the indictment was defective because it charged multiple conspiracies in a single count. The district court denied the motion based on its conclusion that the indictment, on its face, charged a single conspiracy. The court indicated, however, that it would "watch the proofs as they come in" to see if there was a variance between the evidence presented and the charges in the indictment. App. at 54.

On September 15, 1986, the jury trial of the five defendants commenced, and all counsel presented opening statements. The government's opening statement discussed the type of evidence it would present in support of its conspiracy charge. On the basis of this opening statement, in which the government conceded that the defendants hardly ever talked to each other and that it would not produce evidence that the defendants ever all gathered together, the five defendants renewed their motion for a dismissal of the indictment's conspiracy count, claiming an impermissible variance.

The district court expressed concern as to whether the government had sufficient evidence to demonstrate a single conspiracy, and whether this lack of evidence would unduly confuse the jury. App. at 131–32, 152–54, 408–413. Because of these concerns, the district court declared a mistrial and asked that the defendants and the government submit briefs on the motion to dismiss. Specifically, the government was required to provide a written proffer of the evidence it would present at trial.

On November 3, 1986, a hearing was held on the defendants' motion to dismiss the indictment. On the basis of the government's opening statement and its offer of proof outlining the evidence it would present at trial, the district court concluded that no reasonable jury would be able to find a single conspiracy, rather than multiple conspiracies. By order dated December 8, 1986, the district court dismissed Count One (the conspiracy count) of the indictment and granted the defendants' motion for a severance, 649 F.Supp. 631 (D.N.J. 1986).

The government filed a timely notice of appeal from the December 8, 1986 order. Appellate jurisdiction is proper under 18 U.S.C. § 3731.[2] Our review is plenary as to the district court's order of dismissal.

## II.

We first address a preliminary matter raised by the government's April 2, 1987

---

1. Defendants Donsky, Reinfeld, Glenn and Zmirich were meat inspectors in the Newark, N.J. circuit, and defendant Rix was a circuit supervisor.

2. 18 U.S.C. § 3731 provides, in relevant part: In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information ... as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

motion to strike the brief submitted on behalf of the five defendant-appellees. The principal argument presented in the government's motion to strike was that the defendants' brief improperly relied on grand jury testimony which was not a part of the record before the district court.[3] It is elementary that this court cannot consider any material that is not a part of the record. *United States ex rel. Bradshaw v. Alldredge*, 432 F.2d 1248 (3d Cir.1970).

The defendants filed a joint letter memorandum, in opposition to the government's motion to strike, and a cross-motion for costs and sanctions. The defendants argued that the grand jury testimony referenced in their brief was indeed a part of the record before the district court. On the basis of this representation, we denied the government's motion to strike, as well as the cross-motion for costs and sanctions, but required the defendants to submit a supplemental appendix which would set forth *the page and date references to the record* for each page of the grand jury testimony upon which their brief submitted to this court relied.[4]

We received the defendants' supplemental appendix on May 1, 1987. The defendants' submission did not include the requested references to portions of the record. Instead the defendants noted those portions of their *district court briefs* which either made reference to or repro-

duced the relevant transcript pages upon which they now seek to rely.

Fed.R.App.P. 10(a) reads:

**Composition of the Record on Appeal.** The original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court shall constitute the record on appeal in all cases.

Briefs, unless actually filed of record—which these were not—are not a part of the record on appeal. We therefore will not consider those portions of the defendants' brief which refer to the grand jury testimony that is not a part of the record.

### III.

The government argues that once an indictment that is valid on its face [5] has been returned, the question of the sufficiency of the evidence should properly be left to the jury, *see Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), and the indictment cannot be dismissed until at least the close of the government's case. The defendants disagree, arguing that the dismissal of the conspiracy count following the government's opening statement was a proper exercise of the district court's power.

Both parties have directed our attention to this court's decision in *United States v.*

---

**3.** In addition to the argument based on the references to non-record testimony, the government's motion to strike also noted that the defendants' brief omitted the statement of subject matter and appellate jurisdiction required by Third Circuit Court Rule 21(1)(A)(c), the statement of related cases and proceedings required by Third Circuit Court Rule 21(1)(A)(g), the statement of the standard or scope of review required by Third Circuit Court Rule 21(1)(A)(h), and the certification that at least one attorney whose name appears on the brief is a member of the Third Circuit bar required by Third Circuit Court Rule 21(1)(A)(k). The government's motion to strike also noted that *the docket number of the case failed to appear* on the front cover of the brief as required by Fed.R.App. 32(a). The defendants promptly corrected these omissions.

**4.** Our order, in full, read:

The government's motion to strike portions of appellees' brief is denied. The appellees'

cross-motion for costs and sanctions is denied. The appellees shall file and serve on the government a supplemental appendix no later than April 29, 1987 which includes the Grand Jury pages which they contend are part of the record, and shall include a designation which sets forth the page and date reference to the record for each Grand Jury page included in the supplemental appendix. The government shall file its reply brief on May 6, 1987.

**5.** There is no dispute that the instant indictment is valid on its face. The defendants were clearly informed of the statutory violations of which they stand accused, and the indictment, which closely tracks the language of the relevant statutes, contains all of the elements of the offenses charged. *See United States v. Debrow*, 346 U.S. 374, 376, 74 S.Ct. 113, 114, 98 L.Ed. 92 (1953); *see also* Fed.R.Crim.P. 7(c).

*Maker,* 751 F.2d 614 (3d Cir.1984) (Becker, J.), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985), and each argues that *Maker* provides support for its respective position. In *Maker,* two criminal defendants—Robert Maker and Constance Sullivan—were charged with a single scheme to defraud in connection with insurance claims arising out of two automobile accidents in which Maker was involved. A jury was impaneled and the government presented its opening statement. At this point, Maker and Sullivan made a motion to sever the joint trial into four separate ones, thereby allowing each of them to be tried separately for each of the two motor vehicle accidents. In support of their argument to sever as to each other, Maker and Sullivan argued that, as stated in the government's opening argument, the government's intention to introduce their individual statements against each other would effectively defeat their opportunity to confront each other if a joint trial were held. In support of their argument to sever as to the two underlying accidents, Maker and Sullivan argued that the two motor vehicle accidents were not sufficiently related to each other to be part of a single scheme and therefore should not be joined in a single trial.

In response to the motion to sever, the trial court reviewed the evidence that the government intended to introduce at trial. The trial court concluded: (1) that a joint trial would preclude each defendant from having an opportunity to confront the other concerning their individual statements; (2) that to be convicted of a single scheme to defraud, both parties would have had to have planned in advance both motor vehicle accidents; and (3) that the government's evidence would support only multiple conspiracies, not the single conspiracy charged. The trial court granted the motion to sever the trial as to both the defendants and the two accidents. Soon thereafter the trial court concluded that because a variance existed between the single scheme charged and the government's allegations, the problem could not be cured by a mere severance. The trial court therefore dismissed the single conspiracy indictment against Maker and Sullivan.

On appeal, this court examined the question of whether the trial court had erred when it dismissed the indictment against Maker and Sullivan because of the finding of a variance. We concluded that it was not necessary that both accidents be planned from the outset in order to find a single scheme to defraud. *Maker,* 751 F.2d at 626. Applying the correct legal standard and examining the various allegations presented by the government, this court concluded, among other things, that the district court erred in dismissing the indictment because a single scheme to defraud could be supported by the facts the government intended to prove during trial.

The government argues that the *Maker* decision, which reversed the district court's dismissal of an indictment charging a single scheme to defraud, implicitly supports its position that a finding of a variance prior to the full presentation of the government's evidence is premature as a matter of law. The government notes that there is no precedent of this court which supports a district court's decision to dismiss an indictment prior to the close of the government's case in chief. The defendants, however, find implicit support for their position from the fact that although we reversed *Maker* because we disagreed with the conclusion that the government's allegations would not support a single scheme, we did not actually articulate disapproval of the district court's procedure of reviewing the government's allegations at the close of the opening statement.

We cannot agree with either party's assertion that *Maker* buttresses its position. Because *Maker* did not address the question that we today address, we are forced to conclude that *Maker* provides little guidance in the instant case.

We are persuaded, however, that this court's decision in *United States v. Gallagher,* 602 F.2d 1139 (3d Cir.1979), *cert. dismd.,* 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 675 and *cert. denied, McCarthy v. United States,* 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 778 (1980) (hereinafter *Galla-*

gher II), is controlling. *Gallagher II* involved three defendants who had been convicted by a jury of conspiracy, among other counts. An earlier decision of this court, *United States v. Gallagher,* 576 F.2d 1028 (3d Cir.1978) (*Gallagher I*), had remanded the case because of an error in the jury instructions. The district court, on remand, concluded that this court had set out a new legal standard for the offense, and it concluded that the proofs which had been submitted at trial were insufficient to support the indictment under this new standard. The district court therefore dismissed the indictment.

The government appealed, and this court, in *Gallagher II,* vacated the district court's order dismissing the indictment. We concluded that the district court erred in considering the question of whether there was sufficient evidence to support an indictment that was not facially deficient. Instead a new trial should have been held.

> [T]he district court went beyond the text of the charges and analyzed the evidence received at the first trial to determine if it was consistent with the terms of the indictment. We find no authority for such a procedure. To the contrary, in *United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969), the Court observed that Fed.R.Crim.P. 12(b)(1) cautions the trial judge to consider on a motion to dismiss the indictment only those objections that are "capable of determination without the trial of the general issue," and that evidentiary questions should not be determined at that stage. As was held in *United States v. King,* 581 F.2d 800, 802 (10th Cir.1978), the sufficiency of an indictment "may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence." *See generally* 8 Moore's Federal Practice ¶ 12.04 (2d ed. 1978).

*Gallagher II,* 602 F.2d at 1142. *See also Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 406, 100 L.Ed. 397 (1956) (defendant could not challenge legal sufficiency of evidence leading to his grand jury indictment, and facially valid indictment was enough to call for trial of the charge on the merits).

However, *Gallagher II* cannot be read as holding that there can be no circumstances under which a trial court may dismiss a facially valid indictment. *United States v. Dietrich,* 126 F. 676 (8th Cir.1904), written by Judge Van Devanter (later Justice Van Devanter), is the leading case which sets out the limited circumstances in which a motion to dismiss may be granted after a prosecutor's opening statement.

> Where, by the opening statement for the prosecution in a criminal trial, and after full opportunity for the correction of any ambiguity, error, or omission in the statement, a fact is clearly and deliberately admitted which must necessarily prevent a conviction and require an acquittal, the court may, upon its motion or that of counsel, close the case by directing a verdict for the accused.

*Id.* at 677. *See also Hanley v. United States,* 416 F.2d 1160, 1164 (5th cir. 1969), *cert. denied,* 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970) (dismissal improper unless government's opening statement makes it affirmatively appear that government has no case); *Webb v. United States,* 191 F.2d 512, 515 (10th Cir.1951) ("In rare instances the opening statement of a party may show affirmatively that it has no right to recover, or in a criminal case that the prosecution cannot make a case"); *McGuire v. United States,* 152 F.2d 577, 580 (8th Cir.1945) (trial court may direct a verdict upon prosecutor's opening statement when it clearly and affirmatively appears that the charge against the defendant cannot be sustained under any view of the evidence consistent with the statement); *Rose v. United States,* 149 F.2d 755, 758 (9th Cir 1945) (court is justified in terminating a case after prosecutor's opening statement only when the statement affirmatively shows that government has no cause of action and after prosecutor has been given the opportunity to correct or embellish it).

■ We find the reasoning of Judge Van Devanter in *Dietrich* to be persuasive, and we conclude that a dismissal or a directed verdict may be ordered at the conclusion of the prosecution's opening statement only when the prosecution has made a clear and

deliberate concession which must necessarily prevent a conviction, and then only after the prosecution has been given a full opportunity to correct any errors or omissions in its opening statement.

■ Because we have concluded that the government must be given a full opportunity to explain any concessions it may make before any dismissal may be ordered, we recognize that the district court may request a clarification from the government of the meaning of its opening statement. We do not, however, believe that the district court's decision in this case, which required the government to submit an offer of proof[6] delineating what the government intended to prove at trial as to each of the various defendants, was proper.[7] When a question is raised concerning purported concessions by the government, the trial court's inquiry should be limited to determining the exact nature of the government's intended concessions, and specifically whether the intended concessions will prevent a conviction as a matter of law, not whether the evidence in the government's possession would be sufficient to convince a reasonable jury.[8]

## IV.

Applying this standard to the facts of this case, we conclude that the district

6. In the government's proffer of evidence, which the district court directed it to make, the government referred to evidence upon which it alleged that a reasonable jury could conclude: (1) that the scheme could not have survived without the participation and approval of all of the regular meat inspectors at the Leo Keller Plant; (2) that the defendants were generally aware of the larger scope of the conspiracy and they hoped that it would continue; (3) that the defendants all had a common goal of supplementing their income through weekly bribes while permitting the plant to bypass the U.S.D.A. regulations; and (4) that the defendants operated in a virtually identical manner and knew the essential nature of the plan.
Indeed, even though the district court held that a reasonable jury could not find a single conspiracy, it nevertheless agreed that,
[t]he government's proffer does provide some evidence tying the defendants together. There is evidence to suggest that defendant Donsky was asked, on a number of occasions, whether future inspectors were "safe" to bribe. There is also some evidence suggesting that individual defendants were aware that others were taking bribes from the plant as well. Further, the government's proffer does point to an isolated incident of shared profits—one defendant relieved another over a two-week period, and the absent defendant demanded half of the money received during his absence. Finally, the government's "strongest" evidence of a common scheme or enterprise is the longevity and continuity of the bribery activity at the plant.
App. at 406.
A review of the government's proffer of evidence lends strong support to our conclusion that a district court should not dismiss an indictment based solely on the government's opening statement unless unequivocal, clear, and deliberate concessions affirmatively demonstrate that the charges against the defendant cannot be sustained. Whether the proofs at trial will support the government's case is not at issue before us, and we express no view whatsoever as to the sufficiency of the evidence.

7. The only case we have found which supports the procedure utilized by the district court in this case is *United States v. Cryan*, 490 F.Supp. 1234 (D.N.J.) (Stern, J.), *aff'd without opinion*, 636 F.2d 1211 (3d Cir.1980). Both *Cryan* and the instant case were presided over by the same district court judge. This court's affirmance without opinion of the district court's procedure in *Cryan* does not constitute binding precedent. *See* Internal Operating Procedures of the U.S. Court of Appeals for the Third Circuit, Chapter 8(C).

8. Misplaced reliance on the district court's failure to recognize this distinction has apparently led the defendants to argue that "the district court's finding that the government presented evidence of multiple conspiracies in its opening statement and evidential proffer is not clearly erroneous and should therefore not be disturbed by this court." Defendants' Brief at 18. Although the standard of review incorporated in this argument would appear to refer to findings of fact by the district court, the defendants concede, as they must, that "the court found *as a legal matter* that Count One impermissably [sic] charged multiple conspiracies within a single count." Defendants' Brief at 19 (emphasis added).
Nevertheless, the defendants urge us to defer to the district court's "finding" that the evidence proffered by the government demonstrated multiple conspiracies rather than a single conspiracy. We cannot agree that any deference is due. Absent a clear and deliberate concession that would necessarily prevent a conviction, the district court, as a matter of law, is not entitled to rule on the sufficiency of the government's evidence before the close of the government's case in chief. Therefore, despite the defendants' attempt to characterize some portions of the district court's opinion as factual, the district court could not and did not engage in any

court's dismissal of the conspiracy count was in error. Upon examination of the government's opening statement, it is apparent that the government did not make any concession that would *necessarily* prevent a conviction on the single conspiracy count.

The government, in opening, stated:

We don't intend to prove exactly how this scheme started ...

[W]e don't intend to prove that the conspiracy that occurred in this case was like the kind of a conspiracy that you see in a movie on television, a bank robbery conspiracy where the first hour of the show is the robbers getting together and planning the robbery. Who was going to do what. Who was going to be the look out. How they were going to divide the money up afterwards. That is not the way conspiracies necessarily work in the real world and that is not the way it worked here.

There is no claim by the government that we can show you that the defendants got together around a table and said: Let's go to Leo Keller and take money from them.

We couldn't claim that is how it started or that is how it worked. As a matter of fact, what you'll hear in the government's case is that these defendants hardly ever talked about it. They didn't talk when the payments were made ...

There was no talk of money. There was very little discussion among the inspectors, themselves. You'll hear why. They knew it was illegal. They were constantly frightened of someone like McHale having a tape recorder on him and recording the conversations. They were experienced in this sort of thing and they knew enough to keep quiet about the money and about the sampling procedure.

Nevertheless, the tapes will have little bits of conversation by some of these defendants. Little bits that will allow you to see that they were full and active participants. Little bits that will back up the testimony of Otto Gold and Max Keller about what was going on in the plant.

In addition, there will be some evidence of actual discussions among some of the defendants about the fact that Leo Keller was paying money and that in return for the money you were to take your sample from Herbie Bartsch or one of the others.

App. at 78–79.

■ The government conceded that it would not prove exactly how the conspiracy began. It also conceded that it would not prove that all of the defendants ever got together in a single group and agreed to a single, unified plan. However, it is clear that a single conspiracy charge can survive despite the absence of these two elements.

In *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947), the Supreme Court held that a single conspiracy can be found even when the conspirators joined together at different times, and even though the government cannot prove that each of the co-conspirators had knowledge either of all of the details of the overall conspiracy or of the participation of the other co-conspirators.

[Conspiracies] generally are not born full-grown. Rather they mature by successive stages which are necessary to bring in the essential parties. And not all of those joining in the earlier ones make known their participation to others later coming in.

The law does not demand proof of so much. For it is most often true, especially in broad schemes calling for the aid of many persons, that after discovery of enough to show clearly the essence of the scheme and the identity of a number participating, the identity and the fact of participation of others remain undiscovered and undiscoverable. Secrecy and concealment are essential features of successful conspiracy. The more completely they are achieved, the more successful the crime. Hence the law rightly

fact-finding to which deference should properly be accorded. Indeed, since no evidence had been adduced at the time of the district court's ruling, it is difficult to understand on what basis the district court could find facts.

gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others. *Id.* at 556–57. *See also United States v. Riccobene,* 709 F.2d 214, 225 (3d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983) (single conspirator need not know identities of all co-conspirators, nor all the details of the conspiracy).

Additionally, the government conceded that it would not show that the defendants communicated with each other frequently. Although evidence of communication is not required, see *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (participation in a conspiracy may be inferred; need not be proved by direct evidence), and *United States v. Nolan,* 718 F.2d 589, 595 (3d Cir.1983) (same), we note that, in any event, the government did not indicate a total lack of such evidence. In fact, the government stated that it would produce tapes of incriminating conversations between some of the defendants implicating them in the conspiracy.

We conclude that there was nothing in the government's opening statement that would necessarily be inconsistent with a judgment of conviction under the single conspiracy count. The concessions made by the government in the present case are not the type of concessions that establish as a matter of law that a single conspiracy could not be proven. Therefore, the district court erred in dismissing Count One (conspiracy) of the indictment.

## V.

When the district court granted the motion to dismiss the conspiracy count of the indictment, it also granted the defendants' motion to sever the trials. Because the district court's decision to sever relied upon the same reasoning as its decision to dismiss the conspiracy charges, the severance question is properly before us. *Maker,* 751 F.2d at 626.

Our standard of review over a district court's severance decision is whether the

district court abused its discretion by its ruling. *United States v. Boyd,* 595 F.2d 120, 125 (3d Cir.1978). Because we have rejected the district court's conclusion that the indictment charged multiple conspiracies rather than a single conspiracy, and because it is evident that the district court's decision to sever stemmed largely, if not wholly, from this erroneous premise, we conclude that the severance order should be vacated. On remand, the district court will be given a fresh opportunity to consider whether severance would best serve the interests of justice.

## VI.

We will reverse that portion of the district court's December 8, 1986 order which dismissed Count One (conspiracy) of the indictment. Additionally, we shall vacate that portion of the order granting the defendants' motion for severance, and remand for further proceedings consistent with this opinion.