**STATE of Missouri, Respondent,**

v.

**Mark FLAAEN, Appellant.**

**No. WD 46729.**

Missouri Court of Appeals,
Western District.

Oct. 19, 1993.

Jacqueline K. McGreevy, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

HANNA, Judge.

This is an appeal from convictions for burglary in the second degree, § 569.170, RSMo 1986, and stealing over $150, § 570.030, RSMo 1986, returned in the Circuit Court of Jackson County. The defendant was classified as a persistent and a Class X offender and was sentenced to two concurrent ten-year terms of imprisonment.

The facts viewed in the light most favorable to the verdicts are as follows. On December 17, 1990, Mr. David Wolf received a phone call from his wife who told him their son had returned home from school and found that someone had kicked open the front door and broken into their house. The police were called and conducted an investigation. An inventory of the property revealed a number of missing items from the

house, including all of the Christmas presents that had been under the Christmas tree.

Later that day, James Simpson, a maintenance worker at the Hampton Court apartment complex, heard noise coming from the parking lot of the complex. When Mr. Simpson investigated, he saw the defendant and two other individuals taking items from the back seat of a car, putting some of them into the car's trunk and throwing others into a nearby dumpster. When the men drove away, Simpson wrote down the license number of the car. He then called the police. Upon arriving, the police retrieved the items from the dumpster and ran a check on the license plate number, which revealed that the car was registered to defendant.

At about 10:00 p.m., Independence Police Officer Robert Thornhill went to defendant's residence. The defendant got into his car and drove away. When Officer Thornhill stopped the vehicle, the defendant fled on foot. The defendant was apprehended, handcuffed, and taken to the police station.

That evening, Mr. Simpson went to the police station and viewed a photo lineup. He identified the defendant as one of the individuals in the parking lot of the apartment complex. Two days later, Mr. Wolf identified several items recovered from the trunk of defendant's car as being missing from his home.

At the police station, Detective Joel D. Passley read defendant his *Miranda*[1] rights and defendant signed a Waiver of Rights. In defendant's statement he denied committing the burglary, but told the police that he drove the car for various Independence, Missouri burglaries and knew who was committing the burglaries. However, he refused to reveal the names of the offenders.

The defendant was next interviewed by Detective Storey. After telling the detective that he understood his rights and chose to waive them, he denied breaking into homes in Independence, but admitted driving the getaway car. Detective Doug Thompson was also present during this interview, but asked no questions.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Detective Gordon Abraham interviewed defendant the next morning. The defendant's parole officer, Guy Humphrey, was present during this interview. At some point during the interrogation, defendant requested an attorney and Detective Abraham immediately left the room. After a brief discussion, defendant told Humphrey that he would continue talking to the police. Detective Abraham returned and the questioning resumed.[2]

A hearing was held on defendant's motion to suppress the statements he made to police after his arrest. The court overruled defendant's motion. On June 29, 1992, the cause came to trial and defendant was convicted by a jury. This appeal follows.

■ In his first point, the defendant charges the trial court with error in failing to sustain his motion to suppress the custodial statements he made to the police officers who interrogated him. He maintains he made at least four requests for an attorney which were not honored. During the questioning by Detectives Passley and Storey, the defendant made incriminating admissions about his participation in the burglary. Our review of a motion to suppress is limited to whether the trial court's decision is supported by substantial evidence. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986).

■ The defendant argues that he had requested an attorney four different times and the officers continued to question him. Defendant's argument is founded factually on his testimony at the suppression hearing, and ignores other contrary evidence and the trial court's findings of fact. The trial court found that the defendant asked for an attorney on one occasion and the evidence supports that finding. The state offered into evidence two *Miranda* waiver forms signed by the defendant and the testimony of two police officers that the defendant was advised of his rights in accordance with the *Miranda* decision and that only on one occasion did he request an attorney. The request for an attorney made to Abraham is not relevant to our analysis since any statement made to him was not in evidence.

■ It is not the function of appellate courts to interfere with the trial court's determination of the weight of the evidence or its critical task of judging the credibility of the witnesses. *State v. Boggs,* 634 S.W.2d 447, 453 (Mo. banc 1982). The evidence supports the trial court's finding of fact that the defendant's one request to speak to an attorney was made after the incriminating statements had been given. In other words, the trial court did not believe defendant's testimony concerning his request for an attorney on the other three occasions.

■ In his second point, the defendant argues that the trial court improperly limited his opening statement when he attempted to inform court and jury of the nature of the case by outlining the anticipated proof and pointing out the significance of the evidence to be presented.

During the opening statement, the defendant's attorney told the jury:

[Defense counsel]: I think it's particularly noteworthy that you listen very carefully to exactly what Mr. Flaaen told these police officers, *because it will not be as suggested* that he told them that he was involved in this particular burglary or really anything of that type. It will be that ... [Emphasis added]

[Prosecutor]: Objection, Your Honor.

[Court]: Objection sustained.

[Defense counsel]: You will hear a Mr. Simpson testify that he saw an automobile ...

[Prosecutor]: Same objection, your Honor.

[Court]: Objection sustained.

■ The defendant presented no evidence on his own behalf. Most opening statements made by defense counsel when no defense evidence is to be offered will frequently result in an attack on the credibility of the state's witnesses or argument of the facts of the case, neither of which serves the purpose of the opening statement. *State v. Fleming,* 523 S.W.2d 849, 852 (Mo.App.1975). The primary function of the opening statement is to inform both the court and the jury in a general way of the nature of the case

**2.** Although both parties make an issue of Abraham's involvement, he did not testify and any

statements by the defendant to Abraham were not in evidence.

and to outline the anticipated evidence and the significance of that evidence. *Id.* Counsel may frame the issues so that the court and jury may better understand the significance of the proof presented. In this respect, the state is obligated to make an opening statement not only to inform the court and the jury, but also to advise the defendant of the facts the state intends to prove. Rule 27.02(f); *State v. Little*, 572 S.W.2d 871, 873–74 (Mo.App.1978). The same mandate is not imposed on the defendant. Nevertheless, when the defense makes an opening statement, it may not take the opportunity to argue the sufficiency of the state's evidence or the credibility of its witnesses. *State v. Ivory*, 609 S.W.2d 217, 221–22 (Mo.App.1980).

It is evident that the state's first objection went to defense counsel's argument concerning an interpretation of what the defendant told these police officers. It *"will not be as suggested ..."* intimates an argument. The control of the opening statement is within the sound discretion of the trial court. The court did not commit error by considering this to be argument. *Id.* at 222.

The second objection went to counsel's statement concerning the testimony of the state's witness who observed the defendant in the parking lot of the apartment complex. The colloquy that followed at the bench conference suggested that defendant proposed to contrast the state's case with an unendorsed witness that defendant intended to call, but which the evidence showed he did not. The situation is similar to *State v. Hamilton*, 740 S.W.2d 208 (Mo.App.1987) where defense counsel produced no witnesses but wanted to tell the jury what he would develop on cross-examination of the state's two witnesses. This court held that this would be argument, and therefore, improper in an opening statement. *Id.* at 211. The trial court did not abuse its discretion by precluding defense counsel from commenting on Mr. Simpson's testimony.

The judgment of conviction is affirmed.

All concur.