STATE of Missouri, Appellant,

v.

Patrick Thomas SMITH, Respondent.

No. WD 55358.

Missouri Court of Appeals,
Western District.

Submitted Nov. 3, 1998.

Decided March 2, 1999.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Appellant.

George A. Pickett, Plattsburg, for Respondent.

Before ULRICH, P.J.; SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

The State of Missouri, pursuant to § 547.200.2, RSMo 1994,[1] appeals an order of the trial court dismissing a prosecution for felony stealing on the ground that the State's opening statement was deficient. The State contends that the trial court erred in dismissing the action because the State's opening statement was not deficient. The State also contends that, at the very least, the opening statement would support an action for misdemeanor stealing. The State further contends that retrial of the defendant is not barred by double jeopardy. Because we agree that the trial court erred by dismissing the action and that double jeopardy does not bar retrial, the trial court's dismissal of the action is reversed and the cause is remanded for a new trial.

## Factual Background

On March 19, 1997, the State filed a two-count information charging Patrick Thomas Smith with stealing seven walnut logs having a value of over $150.00 in violation of § 570.030, and receiving stolen property with a value of at least $150.00 in violation of § 570.080. The information charged Smith as a prior and persistent offender. Count I alleged that on January 1, 1997, in DeKalb County, Smith stole seven walnut logs belonging to Clarence Duce and Wayne Culley and that the logs had a value of at least $150.00. Count II alleged that Smith received or retained this property, knowing or believing it to be stolen. On the day of the trial, January 12, 1998, an amended information was filed charging Smith with a single count of stealing property, seven walnut logs, with a value of at least $150.00 and alleging that Smith was a prior and persistent offender.

In its opening statement, the prosecution described an alleged scheme by Smith and Campbell to steal "some good walnut trees" belonging to Clarence Duce and Wayne Culley. The prosecutor stated that the evidence would show that Smith and Campbell asked permission to go on the land to "cut some firewood." He said that while they were back in the woods cutting trees, a neighbor by the name of Daniels came upon them. Campbell told Daniels that he and Smith had permission to be "cutting walnut logs." Daniels later told Duce that he had seen Smith and Campbell cutting walnut logs. Smith and Campbell were arrested. The prosecutor said that Campbell would testify that he and Pat Smith were in it together, and that they knew what they were doing, and went into Duce's and Culley's land to cut walnut trees. The prosecutor said that the evidence would be that the walnut trees were "good walnut trees that still weren't ready to be cut or logged." "They were still a little bit young, as the evidence will be from our expert on logs." ... "That's valuable property. If any of you are farmers or have any knowledge at all about trees, walnut logs could be pretty valuable...."

At the conclusion of the opening statement, the defense moved to dismiss, claiming:

> [H]e pled no testimony with respect to any kind of evidence of the value of the property that was involved. He's charged with a felony, which means there has to be some indication that the value was in excess of One Hundred Fifty Dollars. It wasn't there. Nothing at all. No mention of it.

The State explained that it mentioned "that the logs are very valuable." The court stated, "Well, I think on the question of the value, it's something that has to be alleged and one of the elements have to be stated in opening statement." Additionally, the defense argued that there was no reference to venue. The State was not given the opportunity to amend its opening statement. The trial court granted the defense's motion stating, "Well, based on the two items missing, the Court will grant the motion to dismiss." The court then dismissed the jury, explaining

---

1. All statutory references are to Missouri Revised Statutes 1994, unless otherwise indicated.

that, "at this time, the Court has dismissed the case based on the opening statement of the State."

The State appeals.

## Issues

The State, in its sole point on appeal, claims that the trial court erred by dismissing the prosecution against Smith based upon the State's allegedly defective opening statement. The State contends that its opening statement was not defective because it did not clearly and affirmatively appear from the opening statement that the charge against Smith could not be sustained under any view of the evidence. Additionally, the State points out that venue need not be mentioned in an opening statement. The State further claims that the recitation of the evidence in the opening statement at least supported a prosecution for misdemeanor stealing. The State's appeal presents the issue of whether double jeopardy prevents the retrial of a defendant after the trial court has dismissed the case based upon the defendant's motion on the ground that the prosecutor failed to make an adequate opening statement. The State contends that retrial is not barred by the prohibition against double jeopardy.

## Standard of Review

■ The State has no right of appeal in a criminal case unless that right is "expressly conferred by statute in the plainest and most unequivocal terms." *State v. Craig,* 223 Mo. 201, 122 S.W. 1006, 1006 (1909) (citing *State v. Wear,* 145 Mo. 162, 46 S.W. 1099 (1898)); *see also State v. Drake,* 906 S.W.2d 787, 788 (Mo.App.1995) (citation omitted); *State v. White,* 860 S.W.2d 805, 806 (Mo.App.1993) (citation omitted). In the present case, the State's appeal is expressly authorized by statute; the State appeals pursuant to § 547.200.2, RSMo 1994, which provides:

The state, in any criminal prosecution, shall be allowed an appeal in the cases and under the circumstances mentioned in section 547.210 and in all other criminal cases except in those cases where the possible outcome of such an appeal would result in double jeopardy for the defendant....

The issue of double jeopardy is always inherent in the State's appeal of criminal matters. *White,* 860 S.W.2d at 806 (quoting *State v. Casaretto,* 818 S.W.2d 313, 315 (Mo.App. 1991)). Our review therefore, not only encompasses the issue of whether the trial court erred by dismissing the case against Smith, but also whether that dismissal acts as a bar for any further prosecution of Smith on this charge. Because these issues involve questions of law, our review is *de novo. State v. Tinoco,* 967 S.W.2d 87, 89 (Mo.App. 1998).

## Function of the State's Opening Statement

The State claims the trial court erred in dismissing the case against Smith because its opening statement was not inadequate. We agree. We begin by noting that the State is required to make an opening statement in a criminal trial. § 546.070(1), RSMo 1994; Rule 27.02(f). However, even where the State has failed to do so, it has been held not to be reversible error unless the defendant can show prejudice. *State v. Anders,* 975 S.W.2d 462, 466–67 (Mo.App.1998); *State v. Watson,* 839 S.W.2d 611, 615 (Mo.App.1992).

■ The principal function of the State's opening statement is to inform the jury and the defendant of the evidence the State expects to present and the significance of that evidence. *State v. Murray,* 744 S.W.2d 762, 774 (Mo. banc 1988); *State v. Flaaen,* 863 S.W.2d 658, 660–61 (Mo.App.1993). The opening statement also informs a defendant of the anticipated course of the prosecution in order that he have the chance to fairly answer the charge against him. *State v. Brigham,* 709 S.W.2d 917, 923 (Mo.App. 1986). The prosecutor has a good faith duty to describe only those facts that will be proven by the evidence. *State v. Hill,* 866 S.W.2d 160, 163 (Mo.App.1993). An opening statement is not a test of the sufficiency or competency of the evidence. *State v. Bauers,* 702 S.W.2d 896, 899 (Mo.App.1985); (citing *State v. Hurst,* 612 S.W.2d 846, 853 (Mo.App. 1981)).

## Dismissals Based Upon Opening Statements

■■■ Although the scope and manner of opening statements are generally within the discretion of the trial court, *State v. Brooks,* 618 S.W.2d 22, 24 (Mo. banc 1981), and the trial court has the power to enter a judgment of acquittal after the State has made its opening statement, that power should only be exercised "when it clearly and affirmatively appears from the statement that the charge against [the] accused cannot be sustained under any view of the evidence consistent with it." *State v. Gray,* 423 S.W.2d 776, 786 (Mo.1968). We also look at whether the alleged deficiencies in the State's opening statement "den[ied] defendant an understanding of the state's contemplated course of prosecution." *State v. Musil,* 935 S.W.2d 379, 382 (Mo.App.1996). Moreover, before the trial court directs a verdict for the defendant, the State must be given the opportunity to correct or supplement the statement. *Gray,* 423 S.W.2d at 786.

■■■ The sufficiency of the opening statement is tested by accepting as true the facts contained therein together with all reasonable inferences from those facts. *State v. Seddens,* 680 S.W.2d 364, 365 (Mo.App.1984). An opening statement is considered sufficient when it apprises the defendant of the charges against him. *State v. Burkemper,* 882 S.W.2d 193, 197 (Mo.App.1994). Under these standards, it is clear that the State's opening statement in the instant case was adequate, and the trial court erred by finding to the contrary. There was no fact admitted which, as a matter of law, showed that the State's proof would be insufficient to sustain the charge against Smith.

■■■ The State is not required to state facts establishing venue during its opening statement. *State v. McAllister,* 468 S.W.2d 27, 29 (Mo.1971); *State v. Smith,* 708 S.W.2d 292, 293 (Mo.App.1986). Even though venue must be proven, it is not an essential element of an offense. *State v. Lingar,* 726 S.W.2d 728, 732 (Mo. banc 1987). The test as to whether venue has been proven is whether the facts and circumstances of the crime give rise to a reasonable inference that the crime occurred within the jurisdiction of the trial court. *Id.* Applying this test in the present case, it can be inferred that venue was established, even though it was not directly stated during opening statement. The State referred to "good hard-working men of our community" when referring to the men from whom the logs were allegedly stolen.

Although this opening statement will never be hailed as a model of clarity, the opening statement offers an inference that the evidence would show that the value of the logs met the requisite minimum to sustain the charge of stealing. The prosecutor referred to "valuable property" and made the statement, "If any of you are farmers or have any knowledge at all about trees, walnut logs could be pretty valuable." There was nothing in the State's opening statement conceding that the value of the logs was below $150.00 or establishing that the logs had no value, which would have made prosecution of the charged crime impossible. While at the very least, the opening statement establishes a basis for the lesser-included offense of misdemeanor stealing, we believe that the opening statement was adequate for the purposes of proceeding to trial on the felony charge.

The State's opening statement was adequate to serve its purposes: it apprised Smith of the charges against him; informed the court of the facts that the State intended to prove; and informed Smith of the prosecution's planned course so that Smith could defend the charges brought against him. From the opening statement given, it did not affirmatively appear that the State would not be able to bring a submissible case against Smith. Moreover, the law requires that the State be given an opportunity to correct or amend its statement before an order of dismissal is entered, which was not done in this case. Allowing such an opportunity does not turn the trial judge into an advocate for the State as Smith argues in his brief.

The trial court erred in dismissing the charges against Smith based upon the insufficiency of the State's opening statement. The case must be reversed unless retrial is barred. We therefore turn to the question of whether, after our finding that the trial court erroneously dismissed the charges, Smith

can be retried or if double jeopardy acts as a bar to further proceedings.

## The Double Jeopardy Clause

Both the United States Constitution and the Missouri Constitution provide individuals with protection from double jeopardy. U.S. Const. amend. V; Mo. Const. art. I, § 19. The Fifth Amendment to the United States Constitution provides that no person shall "be subject to the same offense to be twice put in jeopardy of life or limb." The Due Process Clause of the Fourteenth Amendment makes the Fifth Amendment applicable to states. *Benton v. Maryland,* 395 U.S. 784, 795, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *State v. Burns,* 877 S.W.2d 111, 112 (Mo. banc 1994). Article I, § 19 of the Missouri Constitution is narrower, providing "nor shall any person be put again in jeopardy of life or liberty for the same offense, after once being acquitted by a jury." The common law rule, "that no person shall for the same offense be twice put in jeopardy" is the law in Missouri, *State v. Toombs,* 326 Mo. 981, 34 S.W.2d 61, 63 (1930), and has been held to be the equivalent to the Fifth Amendment guarantee. *State v. Sumlin,* 820 S.W.2d 487, 494 n. 5 (Mo. banc 1991).

Constitutional double jeopardy provisions are deeply rooted in English common law, *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 168–69, 21 L.Ed. 872 (1873), embodying Blackstone's principles of *autrefois acquit* and *autrefois convict,*[2] *United States v. Wilson,* 420 U.S. 332, 340–42, 95 S.Ct. 1013, 43 L.Ed.2d 232, (1975), preventing retrial in the case of an acquittal or a conviction. However the concept is much older as the "[f]ear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization[,]" with roots running back into ancient Greek and Roman times. *Bartkus v. Illinois,* 359 U.S. 121, 151–52, 79 S.Ct. 676, 3 L.Ed.2d 684, (1959) (Black, J. dissenting); *see also* 21 Am. Jur.2d *Criminal Law* § 319 (1998). The

principles associated with double jeopardy survived when many others did not. As Justice Black notes, "Even in the Dark Ages, when so many other principles of justice were lost, the idea that one trial and one punishment were enough remained alive through the canon law and the teachings of the early Christian writers." *Bartkus,* 359 U.S. at 152, 79 S.Ct. at 696.

■ In *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), the United States Supreme Court recounted the purpose of the prohibition against double jeopardy:

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Basically, the constitutional protection provided by the double jeopardy clause is tri-fold. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

## Double Jeopardy Protection Attaches Only Where Trial Court's Ruling is Tantamount to an Acquittal

■ The point at which double jeopardy attaches depends upon the type of trial. In a court-tried case, jeopardy attaches when the court begins to hear the evidence. *Weir v. State,* 589 S.W.2d 256, 259 (Mo. banc 1979) (citing *Breed v. Jones,* 421 U.S. 519, 531, 95

---

**2.** Blackstone actually lists four special pleas in this category: *autrefois acquit, autrefois convict, autrefois attaint,* and pardon. Of these four, only one is not recognized today as a bar to further proceedings, *autrefois attaint.* This plea, former attainder, prevented trial after a defendant had

been "attainted of felony, by judgment of death[.]" He could plead such attainder to any subsequent indictment for any other felony since he was "dead in law" and "his blood is already corrupted[.]" 4 William Blackstone, Commentaries 330.

S.Ct. 1779, 44 L.Ed.2d 346 (1975); *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). The rule is slightly different for jury trials. It is an oft-repeated maxim that the double jeopardy clause attaches in a jury trial when the jury is "empaneled and sworn." *Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *State v. Tiger,* 972 S.W.2d 385, 388 (Mo.App.1998) (citing *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). Were this a bright-line rule forbidding all subsequent prosecutions upon the occurrence of this event, our analysis would end here. However, the rule does not define a final stage in the proceedings against a defendant whereupon any subsequent trial is forever barred due to double jeopardy considerations.

▮ A defendant has no guarantee that "the government will be prepared to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense." *State v. Aguilar,* 478 S.W.2d 351, 354 (Mo.1972). The double jeopardy provision is not applicable in all circumstances and does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. *Wade v. Hunter,* 336 U.S. 684, 688–89, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

Instead of applying the provision mechanically, courts look at the circumstances surrounding the cessation of the proceedings. There is no rigid formula used in the evaluation of such matters. *United States v. Givens,* 88 F.3d 608, 611 (8th Cir.1996). The State is not always prohibited from retrying a defendant, even after a jury has been empaneled and sworn, where there has been no final determination as to guilt.

The determination that jeopardy has attached is not the end, but the beginning, of our examination of the question of whether retrial is barred under the double jeopardy clause. *White,* 860 S.W.2d at 806 (citing *Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)). It has been recognized that jeopardy does not attach unless a question of the defendant's guilt or innocence is involved. *Serfass v. United States,* 420 U.S. 377, 391–92, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *State v. Bibb,* 922 S.W.2d 798, 801 (Mo.App.1996). For example, double jeopardy does not preclude the retrial of a defendant who has his conviction overturned on appeal, unless the conviction is overturned on the grounds that the evidence was insufficient to sustain a finding of guilt. *State v. O'Brien,* 857 S.W.2d 212, 221 (Mo. banc 1993).

▮ In our determination of whether the outcome of this appeal might result in double jeopardy, we look at the substance of the trial court's ruling, and not its form. *State v. Reed,* 770 S.W.2d 517, 520 (Mo.App. 1989). Double jeopardy implications do not arise in cases in which the trial court has declared a mistrial (not due to the state's misconduct) or where the trial court "terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence." *United States v. Scott,* 437 U.S. 82, 92, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). In such cases, retrial is not barred "where the defendant, instead of obtaining a reversal of his conviction on appeal, obtains the termination of the proceedings against him in the trial court without any finding by a court or a jury as to his guilt or innocence." *Id.* at 100, 98 S.Ct. 2187.

In *Scott,* the Government appealed from the dismissal of two counts of a three count indictment. The defendant had moved to dismiss before trial; the trial court granted the dismissal at the close of all evidence on the ground that the defense had been prejudiced due to preindictment delay. *Id.* at 84, 98 S.Ct. 2187. The *Scott* court held that there was no barrier to retrial. In so holding, the court looked at the traditional pur-

poses behind the double jeopardy prohibition and noted:

> This is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of a defendant who chooses to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt.

*Id.* at 96, 98 S.Ct. 2187.

### Double Jeopardy Implications Where A Case Is Dismissed After Opening Statement

Courts in other jurisdictions have considered the question of how to characterize a dismissal based upon the inadequacies of the State's opening statement and whether such dismissal or "acquittal" bars retrial on double jeopardy grounds. For example, in *People v. Kurtz*, 51 N.Y.2d 380, 434 N.Y.S.2d 200, 414 N.E.2d 699 (1980), a jury was selected and sworn in a case where the defendant was accused of speeding and driving while intoxicated. After the State presented its opening statement, the defendant moved to dismiss on the ground that the prosecution's opening statement was inadequate. *Id.* 414 N.E.2d at 701. The trial court reserved its decision. After one witness had testified, the trial court dismissed the information on the ground that the prosecution's opening statement was insufficient as a matter of law. *Id.* Although the New York Court of Appeals found that the prosecution's opening statement was insufficient, the court held that double jeopardy did not bar retrial. *Id.* 414 N.E.2d at 704. The court held that even though the opening statement was not complete, there was nothing in it indicating that the charges against the defendant could not be sustained. *Id.* 414 N.E.2d at 703. In finding that there was no bar to a retrial of the defendant, the court distinguished between those cases where a trial terminates without any determination as to the guilt or innocence of the defendant and those cases that terminate based on evidentiary insufficiency. *Id.* Citing *Scott*, the court in *Kurtz* found that retrial was permissible because the defendant, in choosing to seek to end the proceedings in a manner unrelated to guilt or innocence, did not suffer an injury cognizable under the double jeopardy clause. *Id.* While the court found that the dismissal was "functionally indistinguishable from the declaration of a mistrial," it cautioned that not every retrial would be permissible, stressing that double jeopardy would forbid retrial where the State, in its opening statement, "clearly and deliberately admits a fact which defeats all possibility for conviction" after which the case is then dismissed. *Id.* 414 N.E.2d at 704.

Similarly, the Appellate Division of the New York Supreme Court, relying on *Kurtz*, found that the decision of the trial court to terminate a case based upon the inadequacy of the State's opening statement did not bar retrial of the defendant in *Lacerva v. Dwyer*, 177 A.D.2d 747, 575 N.Y.S.2d 984 985 (N.Y.App.Div.1991). The court found it significant that the mistrial was granted not because the prosecution lacked sufficient evidence, but because the prosecution did not adequately present all of the elements of the crime and the evidence supporting these elements during its opening statement. *Id.* The trial court did not make any evaluation of the factual elements of the offenses. *Id.* The court held that "[b]y deliberately seeking termination of the proceeding against him . . . on a basis unrelated to factual guilt or innocence of the offenses of which he stands accused, petitioner sustained no injury cognizable under the double jeopardy doctrine." *Id.*

Even labeling a dismissal as an "acquittal" does not raise the double jeopardy bar. In *People v. Deems*, 81 Ill.2d 384, 43 Ill.Dec. 8, 410 N.E.2d 8 (1980), the defendant was originally charged with receiving stolen property. The State admitted that the defendant was not guilty of the charge and that it intended to dismiss the charges and refile theft charges against the defendant. *Id.* 410 N.E.2d at 9. The defendant demanded an immediate trial, and the trial court called the

case for trial. *Id.* 410 N.E.2d at 9–10. Neither side made an opening statement. After the State indicated that it had no witnesses to call, the trial court entered a judgment of acquittal for the defendant. *Id.* 410 N.E.2d at 10. When a subsequent indictment for theft was dismissed on double jeopardy grounds, the State appealed.

The Supreme Court of Illinois held that retrial was not barred on the ground of double jeopardy because the interests traditionally protected by double jeopardy were not threatened. *Id.* 410 N.E.2d at 11. The defendant was at no risk of being found guilty, and no evidence was introduced. *Id.* The trial court's "acquittal" of the defendant did not bar retrial because the action of the court had no characteristics of an acquittal. *Id.* 410 N.E.2d at 10.

In *Hourigan v. Commonwealth,* 883 S.W.2d 497 (Ky.Ct.App.1994), the trial court directed a verdict for the defendant on a "second offense" after the prosecution's opening statement failed to include any details of a prior offense. The trial court's action was held not to bar retrial and deemed to be the functional equivalent of a mistrial because "[n]o evidence was heard ... no testing of the sufficiency of the Commonwealth's case was possible [and][n]o acquittal on the merits was involved." *Id.* at 498. The trial court's action was found to be "more akin to a mistrial" than to a true directed verdict. *Id.*

Double jeopardy considerations were not even discussed by the Third Circuit in *United States v. Donsky,* 825 F.2d 746 (3d Cir. 1987), in its examination of the dismissal of a single conspiracy charge based upon the insufficiency of the Government's opening statement. In its opening statement, the Government conceded that the defendants rarely talked to one another. *Id.* at 748. On the basis of opening statement and the Government's offer of proof, the district court concluded that no reasonable jury would be able to find a single conspiracy and dismissed Count I of the indictment. *Id.* The district court's dismissal of Count I was reversed and remanded for further proceedings. *Id.* at 754.

In the instant case, Smith relies primarily on the one case that appears to be an aberration, *State v. Portock,* 205 N.J.Super. 499, 501 A.2d 551 (1985). In *Portock,* the Appellate Division of the New Jersey Superior Court held that double jeopardy barred retrial of a defendant where the trial court dismissed certain counts in a multi-count indictment based upon the inadequacy of the prosecutor's opening statement. *Portock* relied upon *State v. Lynch,* 79 N.J. 327, 399 A.2d 629 (1979), a case decided before the United States Supreme Court handed down its decision in *Scott.* The *Portock* court based its decision on the fact that jeopardy attaches when the jury is empaneled and sworn, without examining whether the trial court "terminate[d] the proceedings favorably to the defendant on a basis not related to factual guilt or innocence." *Scott,* 437 U.S. at 92, 98 S.Ct. 2187.

### Significance of Defendant's Posture Concerning Dismissal

In Missouri, the prohibition against double jeopardy does not always prevent the retrial of a defendant in the case of a mistrial. If a mistrial is declared, there are two sets of circumstances that permit retrial: (1) where a mistrial is declared by the court without the defendant's request or consent because the trial court concludes that justice would not be served by continuation of the proceedings, or (2) where a mistrial is consented to or requested by the defendant. *State v. Fitzpatrick,* 676 S.W.2d 831, 834–35 (Mo. banc 1984). The former circumstance is an expression of the "manifest necessity doctrine," an example of which is where the trial court declares a mistrial because the jury is unable to reach a verdict. *Id.* at 835; *see also Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Where "manifest necessity" exists for the declaration of a mistrial, there is no bar to retrial, even where the defendant does not consent to the trial court's action. For example, in *State v. Lee,* 948 S.W.2d 627 (Mo.App.1997), the trial judge declared a mistrial *sua sponte* on the second day of the defendant's trial upon recognizing that the defendant's family members were social acquaintances of his. The defendant raised

the defense of double jeopardy in a subsequent proceeding, complaining that he had not consented to the trial court's action. *Id.* at 629. The Eastern District held that double jeopardy did not bar further proceedings because the trial judge had sound reasons for declaring a mistrial and his recusal was the appropriate action to take. *Id.*

 Practically speaking, there is no significant bar to retrial when a defendant requests or consents to a mistrial. *State v. Clover,* 924 S.W.2d 853, 856 (Mo. banc 1996); (citing *State v. Tolliver,* 839 S.W.2d 296, 299 (Mo. banc 1992)); *State v. Zimmerman,* 941 S.W.2d 821, 826 (Mo.App.1997). This holds true even if a mistrial is necessitated because of judicial or prosecutorial error. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). The only possible bar to retrial in this instance would be where a defendant is goaded into requesting a mistrial by governmental or judicial conduct. *Tolliver,* 839 S.W.2d at 299 (citing *Kennedy,* 456 U.S. at 676, 102 S.Ct. 2083)), because as stated in *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971):

> If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributed to prosecutorial or judicial overreaching, a motion by the defendant for a mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.

### Application to Present Case

 Considering the trial court's dismissal as "functionally indistinguishable from the declaration of a mistrial," *Kurtz,* 434 N.Y.S.2d 200, 414 N.E.2d at 704 (citing *Lee v. United States,* 432 U.S. 23, 31, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977)), is logical because it provides a framework for analysis consistent with balancing the right of a defendant to have his trial completed by a particular jury with the public interest in having fair trials ending in just judgments. *Hunter,* 336 U.S. at 689, 69 S.Ct. 834. Under this analysis, we find that the trial court's dismissal of the charges against Smith does not implicate any interest protected by the double jeopardy clause.

In our review of the instant case, we look at whether Smith "deliberately [chose] to seek termination of the proceedings against him on a basis unrelated to the factual guilt or innocence of the offense of which he is accused[.]" *Scott,* 437 U.S. at 98–99, 98 S.Ct. 2187. We conclude that he did. Smith's objections to the prosecution's opening statement and his request for a dismissal were based on its alleged deficiencies, not upon Smith's actual guilt or innocence. The trial court dismissed the case against Smith "based on the two items missing," and not because of any failure of proof on the part of the State or because of an acquittal on the merits. No evidence was presented; the content of opening statements is not considered evidence. *State v. Hoelzer,* 493 S.W.2d 703, 706 (Mo.App.1973).

The trial court dismissed the charges against Smith at Smith's request. Smith's request was functionally similar to a request for mistrial. The trial court's dismissal was not a judgment on the merits and did not purport to declare Smith's innocence or guilt. Instead, the trial court based the dismissal on what it erroneously believed to be missing elements in the State's opening statement. There is no Fifth Amendment bar to a second prosecution.

None of the traditional evils associated with double jeopardy protections are implicated by a retrial. This is not a case where the all the power and might of the State has been improperly mobilized to continue to pursue a defendant whose guilt or innocence has long since been established. A retrial in this case does not thwart the traditional standards of justice and fairness. Society's interest in proceeding with the orderly administration of justice outweighs Smith's interests under the circumstances. Smith did not seek to avoid his conviction on the ground that the State had not sufficiently met its burden of

proof, but instead sought to avoid conviction on a procedural default with no bearing on his guilt or innocence.

## Other Issues

Smith advances several other objections to retrial of the matter. None are meritorious. Primarily, Smith claims that due to changes in the statute, the matter is moot. Alternatively, Smith attempts to provide a statute of limitations defense for the lesser-included offense of misdemeanor stealing.

Smith argues that a recent change in the statute under which he was charged, § 570.030, makes this appeal moot. An amendment to the statute was approved May 27, 1998, placing a $750.00 minimum on the value of the stolen goods for a class C felony. Smith reasons that the value of the logs would have been shown to be $244.25, basing the figure on a figure found on a page in the legal file identified as notes from the preliminary hearing. At the time Smith allegedly stole the logs, the statute he was charged with, § 570.030, stated that "[a] person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." § 570.030.1, RSMo 1994. Subsection 3 of the statute proclaimed, that "Stealing is a class C felony if ... [t]he value of the property or services appropriated is one hundred fifty dollars or more[.]" § 570.030.3(1), RSMo 1994.

 The change in the statute is irrelevant to this appeal. Even were we to assume that $244.25 is correct, the statute at the time of the offense establishes that property taken in the amount of $150.00 or more serves as a basis for a class C felony. Any crime that is committed prior to the amendment of a penal law is unaffected by that amendment, even though sentencing might be affected by the change. § 1.160, RSMo 1994; *see also State v. Gillespie*, 944 S.W.2d 268, 271 (Mo.App.1997).

Smith also argues that the case cannot be remanded for trial on charges of misdemeanor stealing. He claims that there are statute of limitations problems with this approach because the statute of limitations for misdemeanor stealing, § 556.036.1(2), is one year. However, the remand is not for a trial on a misdemeanor charge. Even were that the case, the statute of limitations would not bar retrial. The complaint in this case was filed well within the one-year period. Misdemeanor stealing is a lesser-included offense of felony stealing and "a charge of one crime covers all lesser crimes necessarily included within it." *State v. Stone*, 571 S.W.2d 486, 487 (Mo.App.1978).

## Conclusion

The trial court erred in dismissing the amended information charging Smith with stealing property with a value of at least $150.00. There is no bar to retrial on double jeopardy grounds because the dismissal by the trial court was not tantamount to an acquittal. The judgment of dismissal is reversed and the cause remanded for a new trial.

ULRICH, P.J. and EDWIN H. SMITH, J., concur.