COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-00-477-CR

  
KENRICK 
TREMAINE JONES                                                   APPELLANT
A/K/A 
KENRICK T. JONES

 
V.

 
THE 
STATE OF TEXAS                                                                  STATE

 
------------
 
FROM 
THE 372ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION ON REMAND
 
------------
        On 
original submission, we held that trial counsel was ineffective for failing to 
call any witnesses on Appellant’s behalf, including alibi witnesses counsel 
admitted that Appellant had told him about when counsel was retained over six 
months before trial. See Jones v. State, No. 02-00-477-CR (Tex. 
App.—Fort Worth March 28, 2002) (not designated for publication) (attached 
hereto as Appendix A). On the State’s petition for discretionary review, the 
court of criminal appeals reversed this court’s judgment. Five members of the 
court held that counsel’s failure to interview, investigate, or serve 
subpoenas on alibi witnesses who testified at a motion for new trial hearing 
that Appellant was playing dominoes with them at the time of the offense, did 
not establish deficient performance by counsel. State v. Jones, No. 
678-02, 2004 WL 231309, at *10 (Tex. Crim. App. Jan. 28, 2004) (Hervey, J. 
joined by Keller, P.J., Meyers, Keasler and Cochran, JJ.) (“It was reasonable 
for trial counsel to forego the alibi defense.”) Four members of the court of 
criminal appeals, concurring with the majority, would have held that counsel’s 
performance was deficient but that Appellant failed to satisfy Strickland’s[1] second ineffectiveness prong, that is, failed to show that 
but for counsel’s deficient performance the outcome would likely have been 
different. Id. at *11 (Price, J. concurring, joined by Johnson and 
Holcomb, JJ.) (Womack, J., concurring in separate opinion). Because our original 
opinion found trial counsel ineffective based on Appellant’s first 
ineffectiveness complaint—the failure to investigate and present the alibi 
defense—we did not address Appellant’s second ineffectiveness 
complaint—trial counsel’s failure to investigate employment records which 
would have allegedly established that Appellant was at work during the 
commission of an extraneous robbery which the State introduced at punishment. 
The court of criminal appeals has remanded that issue to us for “consideration 
consistent with” their majority opinion.
        Applying 
the court of criminal appeals majority opinion’s analysis to Appellant’s 
second ground of ineffectiveness, we hold that it was reasonable for trial 
counsel to forego the alibi defense concerning Appellant’s employment records. 
We further hold that Appellant has failed to show that but for counsel’s 
failure to investigate his employment records the result would have been any 
different. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. We 
overrule the balance of Appellant’s second and third points.
        We 
affirm the trial court’s judgment.
 
                                                                  SUE 
WALKER
                                                                  JUSTICE

  
PANEL 
B:   DAUPHINOT, HOLMAN, and WALKER, JJ.

  
PUBLISH
 
DELIVERED: 
March 25, 2004





APPENDIX 
A





 
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-00-477-CR

  
KENRICK 
TREMAINE JONES                                                   APPELLANT
A/K/A 
KENRICK T. JONES

  
V.

  
THE 
STATE OF TEXAS                                                                  STATE

  
------------
 
FROM 
THE 372ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. 
Introduction
        Kenrick 
Tremaine Jones a/k/a Kenrick T. Jones (“Jones”) appeals his conviction for 
aggravated robbery with a deadly weapon, to-wit: a firearm. Jones raises three 
issues on appeal: (1) that the trial court erred in admitting evidence of an 
extraneous offense during the guilt/innocence phase of the trial; (2) that his 
trial counsel was ineffective by not diligently investigating and presenting his 
alibi defense during trial; and (3) that the trial court erred in denying his 
motion for new trial. We sustain Jones’s second and third issues and hold 
that, at the hearing on his motion for new trial, Jones established both prongs 
of the Strickland test for ineffective assistance of counsel and 
therefore was entitled to a new trial. We will reverse and remand.
II. 
Background Facts
        On 
October 31, 1999, Michael Brooks (“Brooks”), a Domino’s Pizza delivery 
man, was robbed in Fort Worth at gunpoint by two men. The two men took 
Brooks’s wallet containing a “[d]ebit card, Texaco credit card, and probably 
half a dozen other credit cards.” On November 1, 1999, the day after the 
robbery, a man later identified as Jones used one of Brooks’s credit cards at 
a Just For Feet store in Richland Hills. Jones was arrested for the October 31, 
1999 robbery of Brooks and charged with aggravated robbery with a deadly weapon.
        During 
an interview with Detective John Livesay on November 19, 1999, Jones gave a 
hand-written statement admitting his use of a stolen credit card at the Richland 
Hills Just For Feet store. In his statement, Jones explained that on November 1, 
1999, “I found a wallet near the dumpster. I opened it to find inside a credit 
card, ID’s, etc. I kept the credit card and discarded the rest into the 
dumpster.” He then admitted to driving with friends to Just For Feet and using 
the card to purchase multiple pairs of shoes. At no point during the interview 
with Detective Livesay did Jones admit involvement in the aggravated robbery.
        The 
jury found Jones guilty of aggravated robbery with a deadly weapon, and the 
trial court sentenced him to ten years’ imprisonment. Jones filed a motion for 
new trial raising ineffective assistance of counsel. The trial court conducted a 
hearing on Jones’s motion for new trial and, after several days of testimony, 
overruled it. This appeal ensued.
III. 
The Trial
        The 
State called three witnesses during the presentation of its case-in-chief: 
Lakesha Houston, a woman who accompanied Jones to the Just For Feet; Robert 
Daniel Abbott, a detective with the Fort Worth Police Department in charge of 
investigating a series of robberies involving pizza delivery men; and the 
victim, Michael Wayne Brooks.
        Lakesha 
Houston testified first. She stated that she met Jones on November 1, 1999, when 
a friend introduced him to her as “Michael Brooks.” That evening, she drove 
Jones and two other friends to Just For Feet, and all four of them commenced 
shopping. Houston testified that after they had finished shopping, she observed 
Jones pay for all of their items with Brooks’s credit card. According to 
Houston, the total bill amounted to approximately $500. Houston said that she 
did not know that Jones was using a stolen credit card to make the purchase, but 
that days later she began to suspect as much. Consequently, she went back to 
Just For Feet to return the shoes that Jones had bought for her and to inform 
the store manager that she thought the shoes had been purchased through a 
fraudulent transaction. At trial, Houston looked at several still photographs 
taken by the Just For Feet security camera and identified Jones as the person 
depicted paying the store’s cashier and then leaving the store with shopping 
bags in tow.
        Detective 
Robert Abbott testified after Houston. He stated that he showed Michael Brooks 
six photographs of individuals with similar features and asked Brooks if he 
recognized any of them as the men who robbed him. Brooks selected a photograph 
of Jones. Detective Abbott took Jones into custody the next day.
        Michael 
Brooks was the State’s final witness. He explained that on the evening of 
October 31, 1999, he was walking back to his car after delivering a pizza when 
two men approached him, pushed him against the side of his car, and placed a 
“gray automatic” weapon to his neck. According to Brooks, only one of the 
two robbers had a gun. Brooks testified that he twice managed to glimpse the 
robbers’ faces. First, Brooks turned his head while he was shoved against the 
car. He testified he saw “one face at that point.” The robbers then forced 
Brooks from the side of the car to a face-down position in the grass, where they 
began to rifle through his pockets. At that time, Brooks twisted his head over 
his shoulder and glanced at both robbers. Brooks said he got a “good look” 
at the robbers because a street light approximately “50, 75 feet on the other 
side of the road” cast some light in the area.
        Jones’s 
trial counsel impeached Brooks on cross-examination. Counsel first established 
that a man named Billy Don Smith already had been convicted of this robbery as 
one of the two robbers. Counsel then asked Brooks if Jones had been the 
gun-wielding robber. When Brooks responded affirmatively, counsel showed him a 
copy of a statement that he had given to a detective during the investigation of 
Billy Don Smith. In that statement, Brooks had identified Billy Don Smith as 
“the one that had the gun.” Counsel also elicited testimony from Brooks 
confirming that, on the night of the robbery, he had told a police officer that 
one of the robbers was between the ages of sixteen and eighteen, and that the 
other was between the ages of twelve and thirteen. When Brooks later met with a 
detective and picked Billy Don Smith’s photograph out of a lineup, he 
identified Smith as the sixteen-to-eighteen-year-old robber. The 
twelve-to-thirteen-year-old robber therefore remained at large. Jones is a 
twenty-year-old man.
        After 
Brooks testified, the State closed its case-in-chief. In turn, Jones’s counsel 
indicated that the defense was going to rest without calling any witnesses or 
presenting any evidence. Jones responded to his counsel’s announcement by 
stating, “[h]old on a second.” After a pause in the proceedings, during 
which Jones had the opportunity to confer with his attorney, the trial court 
questioned Jones:
  
THE 
COURT: Your attorney has indicated that he intends to rest behind the State and 
attack their case as a defense rather than put on affirmative evidence. Is that 
okay with you?
 
THE 
DEFENDANT: Yes, Your Honor.

  
The 
defense rested. The next day, the jury returned a guilty verdict.
IV. 
Motion For New Trial Hearing
        Five 
people testified at the hearing on Jones’s motion for new trial: Jones’s 
trial counsel; Ron Pendergraf, Jones’s appellate counsel’s investigator; 
Sheila Gordon, an alibi witness; Michael Franklin, an alibi witness; and Jones.
        Jones’s 
trial counsel testified that he made his first appearance in the case on March 
3, 2000, eight months before trial. He explained that at that time Jones had 
provided him with the names of three alibi witnesses: Sheila Renae Gordon, Debra 
Woods[2] and Lloyd Turner. Of those three witnesses, 
trial counsel’s investigator was only able to locate Woods. Counsel 
acknowledged that he did not attempt to subpoena any of these alibi witnesses 
until two days before trial. Two days before trial, he had subpoenas issued for 
Woods, Gordon, and Turner. None of the subpoenas were served. Counsel explained 
that Woods was not served because she failed to meet counsel’s investigator at 
a pre-arranged time. When asked why he chose to rest Jones’s defense rather 
than move for a continuance to secure the testimony of these alibi witnesses, 
counsel responded, “we made [the] strategic decision . . . that we stood a 
good chance that the State didn’t put on enough evidence to find the Defendant 
guilty.” Counsel stated that he and Jones had “carefully” weighed the 
decision not to seek a continuance, and that Jones ultimately had agreed with 
the strategy of not putting on an alibi defense.
        Ron 
Pendergraf, the investigator used by Jones’s appellate attorney, testified 
next. He stated that the trial court had appointed him to this case in early 
January 2001, allowing him roughly two weeks before the motion for new trial 
hearing to investigate the three alibi witnesses named by Jones. In those two 
weeks, Pendergraf had some difficulty locating the witnesses. He determined 
Sheila Gordon’s residence and left his business card there. He also determined 
that there was a “good possibility” that he could locate the remaining two 
alibi witnesses if given additional time.
        The 
trial court took a brief recess and then the defense called Sheila Gordon. 
Gordon explained that she was incarcerated in the Tarrant County jail and that 
she had been subpoenaed to the hearing. She testified that she and Jones were 
living together in October 1999. She stated that on the night of the aggravated 
robbery, her five children went trick-or-treating while she and Jones stayed 
home playing dominoes.
        Gordon 
explained that sometime between Thanksgiving and Christmas of 1999, a detective 
came to her house and questioned her about Jones’s whereabouts on the night of 
the aggravated robbery. Gordon could not remember the detective’s precinct, 
however she testified that he had displayed his badge for her and carefully 
glanced around the inside of her house while he conducted the interview. Gordon 
said that she had cooperated with the detective and told him that Jones had been 
with her during the entire night of October 31, 1999. She noted that the 
detective did not ask her to give a written statement nor require her to go to 
the police station.
        When 
asked if she knew that Jones’s trial counsel had a subpoena issued for her to 
appear and testify at Jones’s trial on November 8, 2000, Gordon replied that 
she had not been aware of that fact, but added that she would have been willing 
to testify on that date had she been notified or been served with the subpoena. 
Gordon said that had she testified at Jones’s trial, her testimony would have 
been the same as the testimony she provided at the motion for new trial hearing.
        Because 
Pendergraf informed the court that there was a “good possibility” that he 
could locate the remaining two alibi witnesses, Woods and Turner, if he were 
given additional time, the court recessed the motion for new trial hearing. A 
week later, the court reconvened the hearing. The defense called Michael 
Franklin. Franklin’s name was mentioned by Gordon as someone present at her 
apartment on October 31, 1999, the evening the robbery of Brooks occurred. 
Franklin testified he had known Jones for eight years and was with him in 
Gordon’s apartment on Halloween 1999. Franklin testified that Woods and Turner 
were also present. Franklin said that he was not contacted by Jones’s trial 
counsel or by counsel’s investigators, but that he would have been willing to 
testify at Jones’s trial if he had been called as a witness.
        The 
defense next recalled Ron Pendergraf. He testified that, during the one-week 
recess of the hearing, he had located Michael Franklin and had located Lloyd 
Turner’s place of business. He testified that he was still looking for Debra 
Woods.
        Finally, 
Jones testified. He stated that “from the beginning” he had identified 
Sheila Gordon, Debra Woods, and Lloyd Turner as alibi witnesses that his trial 
counsel should call to testify at trial. Jones said that he had emphasized 
Gordon’s name in particular because in 1999 he was “always at the house” 
with her. According to Jones, his trial counsel never asked him to meet with 
investigators in an effort to locate Gordon, Woods, or Turner. Indeed, he 
claimed that it was two to three days before trial when the investigators 
finally sought his assistance in finding the three witnesses. Jones noted that 
he had encountered Woods the morning before jury selection and that she had 
acknowledged her arrangement with investigators to be served with a subpoena and 
to testify at Jones’s trial. Though Woods failed to meet the investigators or 
to appear at trial, Jones asserted that he could have located her again had his 
counsel moved for a continuance rather than resting without putting on a 
defense.
        Jones 
testified that he was surprised his trial counsel never called any witnesses 
because alibi witnesses always had been a part of their discussions about his 
case. He also said that he did not know that his trial counsel could have moved 
for a continuance when his alibi witnesses failed to appear. At the motion for 
new trial hearing, Jones’s appellate attorney questioned Jones about his 
discussion with his trial counsel during the pause in the proceedings after the 
State had rested.
  
Q. 
Did [trial counsel] present it as an option that you could rest or call 
witnesses, or did he present it as this is how it is going to happen, we’re 
not going to call witnesses, there’s not really a choice?
 
A. 
There’s not really a choice.
 
Q. 
So was he really asking you to agree to this or just telling you how it was 
going to happen?
 
A. 
He just told me exactly how it was going to happen.

  
When 
asked during cross-examination why he did not speak out against counsel’s 
decision to rest and request that he move for a continuance, Jones replied, 
“At that point in time, I didn’t know anything about we could get a 
continuance [sic], so if I don’t know, how could I be sitting here saying I 
want a continuance?” Jones further explained that he did not realize he could 
ask the trial judge for clarification if he did not understand something that 
transpired during his trial. For instance, at the hearing, the judge honed in on 
the moment at trial when Jones, having conferred with his counsel, stated in 
open court that he had agreed to rest his case.
  
Q. 
You didn’t ask me any questions or say that you had concerns or anything at 
that time; is that correct?
 
A. 
Correct.
 
Q. 
Is that because based on the information you had, you didn’t have any concerns 
at that time since you didn’t know you could ask for a continuance?
 
A. 
I had concerns, but I was not sure how to express them.
  
V. 
Ineffective Assistance of Counsel
        We 
apply a two-pronged test to ineffective assistance of counsel claims. Strickland 
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson 
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must 
show that his counsel’s performance was deficient; second, appellant must show 
the deficient performance prejudiced the defense. Strickland, 466 U.S. at 
687, 104 S. Ct. at 2064.
        In 
evaluating the effectiveness of counsel under the first prong, we look to the 
totality of the representation and the particular circumstances of each case. Thompson, 
9 S.W.3d at 813. The issue is whether counsel’s assistance was reasonable 
under all the circumstances and prevailing professional norms at the time of the 
alleged error. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065. 
“[C]ounsel is strongly presumed to have rendered adequate assistance and made 
all significant decisions in the exercise of reasonable professional 
judgment.” Id. at 690, 104 S. Ct. at 2066. Our scrutiny of counsel’s 
performance must be highly deferential, and every effort must be made to 
eliminate the distorting effects of hindsight. Id. at 689, 104 S. Ct. at 
2065.
        The 
second prong of Strickland requires a showing that counsel’s errors 
were so serious that they deprived the defendant of a fair trial, i.e., a trial 
whose result is reliable. Id. at 687, 104 S. Ct. at 2064. In other words, 
appellant must show there is a reasonable probability that, but for counsel’s 
unprofessional errors, the result of the proceeding would have been different. Id. 
at 694, 104 S. Ct. at 2068. A reasonable probability is a probability 
sufficient to undermine confidence in the outcome. Id. The ultimate focus 
of our inquiry must be on the fundamental fairness of the proceeding whose 
result is being challenged. Id. at 697, 104 S. Ct. at 2070.
        Generally, 
the trial record will not be sufficient to establish an ineffective assistance 
of counsel claim. Thompson, 9 S.W.3d at 813-14; Kemp v. State, 892 
S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). 
This is true because normally a silent record cannot rebut the presumption that 
counsel’s performance was the result of sound or reasonable trial strategy. Strickland, 
466 U.S. at 688, 104 S. Ct. at 2052; Mallett v. State, No. 01-41-055, 
slip op. at 4, 2001 WL 1621938, at * 2 (Tex. Crim. App. Dec. 19, 2001); Stafford 
v State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). However, a defendant 
may rebut the presumption by providing a record affirmatively demonstrating the 
alleged ineffectiveness. Mallett, No. 01-41-055, slip op. at 4, 2001 WL 
1621938 at * 2; Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 
1994); Bohnet v. State, 938 S.W.2d 532, 536 (Tex. App.—Austin 1997, 
pet. ref’d). This record may be provided by a motion for new trial hearing. Courtney 
v. State, 39 S.W.3d 732, 735 (Tex. App.—Beaumont 2001, no pet.) (holding 
that record of counsel’s ineffectiveness developed at hearing on defendant’s 
motion for new trial).
        Jones 
contends that his trial counsel was ineffective for failing to diligently 
investigate and present his alibi defense during trial.[3]  
We first must determine whether, in light of all the circumstances and the 
professional norms at the time, counsel’s decision to rest Jones’s defense 
rather than move for a continuance to present an alibi defense amounts to 
deficient performance under the first Strickland prong.
A. Strickland’s First Prong: Deficient 
Performance.
        Counsel 
has the duty to make an independent investigation of the facts and circumstances 
of the case by seeking out and interviewing potential witnesses. Ex parte 
Welborn, 785 S.W.2d 391, 395-96 (Tex. Crim. App. 1990); Ex parte Ybarra, 
629 S.W.2d 943, 946 (Tex. Crim. App. 1982); Ex Parte Duffy, 607 S.W.2d 
507, 517 (Tex. Crim. App. 1980), overruled on other grounds by Hernandez v. 
State, 988 S.W.2d 77 (Tex. Crim. App. 1999); Butler v. State, 716 
S.W.2d 48, 54 (Tex. Crim. App. 1986). Once counsel has investigated the facts 
and developed a defensive theory, counsel is obligated to present sufficient 
available evidence in support of that defensive theory. See Duffy, 607 
S.W.2d at 518; Butler, 716 S.W.2d at 54-55; Shelton v. State, 841 
S.W.2d 526, 527 (Tex. App.—Fort Worth 1992, no pet.).
        The 
failure to adequately investigate or to present an alibi defense has been held 
to constitute ineffective assistance of counsel on many occasions. See 
Butler, 716 S.W.2d at 55-56 (counsel failed to interview or call known fact 
and alibi witnesses or investigate other exculpatory evidence); Shelton, 
841 S.W.2d at 527 (counsel failed to call alibi witness); Doherty v. State, 
781 S.W.2d 439, 442 (Tex. App.—Houston [1st Dist.] 1989, no pet.) (counsel 
failed to subpoena any witnesses, failed to investigate a different possible 
suspect, an alibi witness, and fact witnesses); see also Ex parte Lilly, 
656 S.W.2d 490, 493 (Tex. Crim. App.1983) (counsel spent only minutes preparing 
for trial, did not conduct any investigation or call any witnesses); Haynes 
v. State, 790 S.W.2d 824, 827 (Tex. App.—Austin 1990, no pet.) (counsel 
did not interview available, beneficial defense witnesses and did not visit 
scene of offense). The burden is on the defendant to show that the purported 
alibi witnesses were available and that their testimony would have been helpful 
to him. King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (holding 
that failure to call a witness may support ineffective assistance of counsel 
claim only if it is shown witness was available and defendant would have 
benefitted from testimony); see also Butler, 716 S.W.2d at 55 (same).
        We 
presume defense counsel provided reasonable professional assistance and that his 
actions might be considered sound trial strategy. Jackson, 877 S.W.2d at 
771. We examine the record to determine whether Jones has rebutted this 
presumption by providing a record from which we can determine that trial 
counsel’s performance was not reasonable under the circumstances and 
prevailing professional norms or based on sound trial strategy. See 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. We also examine the record 
to determine whether Jones has established that the alibi witnesses were 
available and that their testimony would have been helpful to him. See Salinas 
v. State, 773 S.W.2d 779, 782 (Tex. App.—San Antonio 1989, pet. ref’d).
        The 
record reflects the following testimony by Jones’s trial counsel at the motion 
for new trial hearing:
  
Q. 
Do you recall when you were retained on this matter?
 
A. 
I can’t recall exactly the month and time . . . but I believe it was at least 
six months prior.
 
Q. 
Now, in preparing for the trial, did you develop through interviews with my 
client or other people a list of possible alibi witnesses?
 
A. 
We went over the possibility of alibi witnesses, yes, but we didn’t prepare a 
list.
 
Q. 
I’m sorry, I’m sorry. I actually meant prepared in your mind. Were you aware 
of some witnesses?
 
A. 
Yes.
 
Q. 
Did you, in fact, attempt to locate through investigators three alibi witnesses 
named Sheila Renae Gordon, Debra Woods and Lloyd Turner?
 
A. 
Yes.
 
Q. 
All right. And were your investigators successful in locating any of these three 
witnesses?
 
A. 
Yes, one witness.
 
Q. 
And who was that?
 
A. 
I believe that was – if you can remind me of the names again.
 
Q. 
Sheila Renae Gordon, Debra Woods or Lloyd Turner.
 
A. 
I believe we located Woods.
 
Q. 
Okay. And the –the basis of the alibi theory was that the Defendant was with 
these three individuals on the night and at the time of the alleged aggravated 
robbery; is that correct?
 
A. 
Yes.
 
Q. 
And they would testify as to that; is that correct?
 
A. 
Yes.
 
Q. 
And that was developed through your investigators, correct?
 
A. 
Yes. My investigator located one person who seemed to verify that to some 
degree.
 
. 
. . .
 
Q. 
But you have told the Judge that you knew the names Sheila Renae Gordon, Debra 
Woods and Lloyd Turner?
 
A. 
Yes.
 
Q. 
And these were names that were supplied to you from Kendrick [sic] Jones?
 
A. 
Yes.
 
Q. 
So these were not names that you learned subsequent to his conviction?
 
A. 
No.

        . 
. . .
 
Q. 
Do you recall approximately how long before the trial you requested the 
subpoena?
 
A. 
Yes. Maybe one to two days.
 
Q. 
How long of a trial was this case?
 
A. 
I think it was three days.
 
Q. 
Did you have your investigators continually trying to locate these people?
 
A. 
Yes.
 
Q. 
Did you file a written Motion for Continuance requesting a continuance so that 
you might secure the testimony of Ms. Woods or the other two witnesses?
 
A. 
No.
 
Q. 
Why did you not do that?
 
A. 
When the trial started, we were still under the impression that we would be able 
to locate these witnesses and that they weren’t avoiding us, and so we 
didn’t file a motion prior to trial, and at the close of State’s evidence, 
we made a strategic decision to not continue or ask for a Motion for Continuance 
because we felt that we stood a good chance that the State didn’t put on 
enough evidence to find the Defendant guilty.
 
Q. 
So what was – your trial strategy was you felt the State’s case was 
factually insufficient?
 
A. 
Yes.

        As 
previously outlined, the record before us also contains the motion-for-new-trial 
testimony of Gordon and of an alibi witness she mentioned, Franklin. Both of 
these witnesses testified that they were willing to testify at Jones’s trial 
and that Jones was at Gordon’s apartment on the evening of the robbery. 
Further, Jones’s trial counsel testified that his investigator had located 
Woods and that her testimony would have verified Jones’s alibi defense. Jones 
testified that he saw Woods the day before the trial. Thus, the record before us 
establishes that these three witnesses were available. The record likewise 
establishes that their testimony would have benefitted Jones.
        The 
benefit of Gordon’s, Franklin’s, or Woods’s alibi testimony is clear. At 
trial, the jury heard Brooks positively identify Jones as one of the robbers. 
Although Jones’s counsel impeached Brooks’s identification of Jones as the 
robber with the gun, Brooks’s identification of Jones as one of the robbers 
was not challenged. Jones’s only possible defense was one of alibi. Both Woods 
and Gordon would have provided Jones with an alibi and testified, as they did at 
the motion for new trial hearing, that Jones was at Gordon’s house during the 
night of the robbery.
        The 
State argues that trial counsel’s decision “to not use the alibi” defense 
was sound trial strategy because Gordon’s testimony actually would have 
“hurt” Jones by placing him at Gordon’s home playing dominoes with Billy 
Don Smith on the night of the robbery. Gordon testified, however, that although 
Billy Don Smith left her home later in the evening, Jones never left her 
residence on the night of Brooks’s robbery. Moreover, the record reflects that 
neither trial counsel nor his investigator spoke to Gordon prior to trial. 
Therefore, trial counsel could not, as the State contends, have made a strategy 
decision that the content of Gordon’s testimony would have “hurt” Jones. See 
Lane v. State, 942 S.W.2d 208, 211 (Tex. App. —Fort Worth 1997), reversed 
on other grounds, 971 S.W.2d 451(Tex. Crim. App. 1998) (holding that 
performance of counsel must be evaluated in light of what was known to counsel 
at time of trial and not in hindsight).
        The 
State also argues that counsel’s decision not to use the alibi defense was a 
sound strategy decision because Gordon’s testimony would have harmed Jones by 
raising the issue of identity and would have opened the door to admission at the 
guilt-innocence phase of an extraneous offense ultimately admitted at 
punishment. See Tex. R. Evid. 
404(b); Mitchell v. State, 503 S.W.2d 562, 564 (Tex. Crim. App. 1974) 
(holding that defensive theory of alibi raises issue of identity). The 
extraneous offense referred to is the robbery of another pizza delivery man in 
Fort Worth that occurred approximately three months after Brooks had been 
robbed.[4]
        Raising 
the issue of identity does not automatically render evidence of extraneous 
offenses admissible. Lane v. State, 933 S.W.2d 504, 518 (Tex. Crim. App. 
1996). To be admissible to show identity, an extraneous offense must be so 
similar to the offense charged that the offenses are marked as the accused’s 
handiwork. See id; see also Bishop v. State, 869 S.W.2d 342, 346 
(Tex. Crim. App. 1993). The evidence should indicate such an unusual and 
distinctive method or characteristics as to constitute a signature offense. Collazo 
v. State, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981); Lazcano v. State, 
836 S.W.2d 654, 659 (Tex. App.—El Paso 1992, pet. ref’d).
        After 
a careful review of the record, it appears to be a close call as to whether 
evidence of the extraneous offense would have been admissible in the 
guilt/innocence phase even if Jones’s identity had been placed in issue by 
alibi witnesses. Compare Beets v. State, 767 S.W.2d 711, 740 (Tex. 
Crim. App. 1987) (op. on reh’g) (noting the defendant’s “signature” use 
of the same weapon, the same motive, the same time of day and the same means of 
disposing of bodies in two different murders), cert. denied, 492 U.S. 912 
(1989) with Lazcano, 836 S.W.2d at 659 (holding general 
similarities between sexual assault offenses were “wholly innocuous as such 
features would tend to be common to many cases”); but see Collins v. State, 
548 S.W.2d 368, 376 (Tex. Crim. App. 1976) (holding that four small business 
robberies in Waco that occurred relatively close in time and involved (1) 
appellant acting alone, (2) brandishing a pistol, (3) and making victim lie 
face-down on the floor were admissible to show identity), cert. denied, 
430 U.S. 959 (1977).
        Assuming, 
however, that the State is correct that admission of alibi testimony would 
trigger admission of the extraneous offense, the record before us establishes 
that the alibi testimony nevertheless would have benefitted Jones. Alibi 
testimony would have given the jury an opportunity to choose between the 
State’s version of events on the night of October 31, 1999, possibly 
buttressed by an extraneous subsequent robbery, and Jones’s version of events. 
Such choice is the essence of the “reliable adversarial testing process” 
called for in Strickland. See 486 U.S. at 685, 104 S.Ct. at 2065 
(noting that a fair trial is one in which evidence subject to adversarial 
testing is presented to an impartial tribunal for resolution). We hold that the 
record before us establishes that Gordon, Franklin, and Woods were available and 
that their testimony would have benefitted Jones.
        Thus, 
the record before us, developed by Jones at the hearing on his motion for new 
trial, establishes that trial counsel was aware of Jones’s alibi defense many 
months before trial; that Jones provided the names of three alibi witnesses to 
his trial counsel; that counsel’s investigator located only one of the 
witnesses; that the one witness located, Woods, corroborated that Jones was with 
her on the night of the robbery; that despite trial counsel’s knowledge that 
the case was set for trial[5], he failed to have 
subpoenas issued for the alibi witnesses until only two days before trial, and 
then failed to get them served; that at the beginning of trial, counsel still 
thought the alibi witnesses would be served and intended to put on an alibi 
defense; that after the State rested, counsel made the strategic decision to put 
on no defense because he believed the State’s case was factually insufficient; 
and that Gordon, Franklin, and Woods were available and their testimony would 
have been helpful to Jones’s defense.
        We 
now turn to the question of whether this record affirmatively demonstrates the 
ineffectiveness of Jones’s counsel. That is, whether trial counsel’s failure 
to secure service of subpoenas on the alibi witnesses and to move for a 
continuance to secure their presence may, when viewed from counsel’s 
perspective at the time he took these actions, without the distorting effects of 
hindsight, fall outside the wide range of professionally competent assistance. See 
Strickland, 486 U.S. at 690, 104 S. Ct. at 2066. Jones’s trial counsel’s 
articulated strategy for failing to seek a continuance to secure the presence of 
alibi witnesses was his belief that the State “didn’t put on enough evidence 
to find the defendant guilty.” Applying great deference to counsel’s trial 
judgment, we hold that this decision was not reasonable based on the facts and 
circumstances existing at the time it was made. Brooks, the victim, identified 
Jones as the robber. The State’s case rested solely on this identification.[6] Jones’s only viable defense was to present his alibi. 
In choosing to rest after the State rather than moving for a continuance to get 
the subpoenas served on potential alibi witnesses, counsel effectively deprived 
his client of any defense. At that point in the trial, counsel’s duty to 
“present sufficient available evidence in support of [his client’s] 
defensive theory” had not run its course. Duffy, 607 S.W.2d at 518; See 
also Butler, 716 S.W.2d at 48; Shelton, 841 S.W.2d at 527.
        Moreover, 
the record reflects that counsel had subpoenas issued for the alibi witnesses 
and intended to call these witnesses at trial. He was “under the impression 
that we would be able to locate these witnesses” and serve them with subpoenas 
prior to presentation of the defense’s case. The record thus affirmatively 
demonstrates that the failure to get the subpoenas served on the alibi witnesses 
was not part of a calculated trial strategy or tactical decision, but that 
service simply had not been effectuated by the time the State rested. Strickland, 
486 U.S. at 690-91, 104 S.Ct at 2066.[7]
        The 
State seems to assert that because Jones’s trial counsel obtained Jones’s 
consent to his decision to put on no defense Jones’s consent somehow validated 
this decision or made it reasonable. When Jones audibly reacted to his trial 
counsel’s unilateral decision to rest without calling any witnesses or 
offering any evidence, the trial court provided trial counsel the opportunity to 
confer with Jones, and Jones gave his consent. Because the witnesses had not 
been served with subpoenas, Jones’s consent to not calling them was 
meaningless. It was impossible to call them, absent a motion for continuance. 
Thus, the record before us does not reflect that Jones’s trial counsel reached 
a strategic decision based on Jones’s desires and consent.
        In 
light of the totality of Jones’s representation and all of the circumstances 
and prevailing professional norms at the time of trial, even giving great 
deference to the judgment of trial counsel, we cannot conclude that Jones’s 
trial counsel possessed any plausible basis or reasonable strategy for failing 
to move for a continuance to secure the presence of the alibi witnesses. We hold 
that, based on the record before us, Jones rebutted the strong presumption that 
counsel’s performance was the result of sound or reasonable trial strategy and 
demonstrated that his counsel’s performance was deficient.
        Accordingly, 
and in light of the totality of counsel’s representation in this particular 
case, we hold that “counsel’s representation fell below an objective 
standard of reasonableness.” Strickland, 466 U.S. at 669, 104 S. Ct. at 
2055. Jones has satisfied the first prong of the Strickland test.
 
B. 
Strickland’s Second Prong: Prejudice.
 
        We 
now consider the second prong of Strickland, under which we must 
determine whether counsel’s decision to forgo moving for a recess or 
continuance to put on an alibi defense ultimately deprived Jones of a fair 
trial. See 466 U.S. 687, 104 S.Ct. at 2064. The test is whether there is 
a reasonable probability that, but for counsel’s unprofessional errors, the 
result of the proceeding would have been different. Id. at 694, 104 S. 
Ct. at 2068. In applying this test, we are guided by our decision in Shelton. 
841 S.W.2d at 526.
        In 
Shelton, the defendant was charged with sexual assault of a child. Id. 
His initial conviction was reversed, and he was tried a second time. At 
re-trial, the defendant’s attorney failed to call as an alibi witness the 
defendant’s great-niece, who had testified at the first trial, and whose 
testimony would have directly contradicted the complainant’s testimony. Id. 
It was established that the niece would have been available to testify in 
the second trial, but the defense attorney never contacted her. Id. at 
527. This court held counsel was ineffective and reversed the conviction:
 
When 
counsel neglected to present available testimony in support of Shelton’s alibi 
defense, he failed in his professional duty to his client. See Ex Parte 
Ybarra, 629 S.W.2d 943, 948 (Tex. Crim. App. 1982). The attorney’s 
failure to advance the one defense apparently available to Shelton clearly made 
his assistance ineffective if not incompetent. See Ex parte Duffy, 
607 S.W.2d 507, 517 (Tex. Crim. App. 1980).

 
Id. 
(emphasis added).
        Like 
Shelton’s counsel, Jones’s trial counsel squelched the one defense available 
to his client when he abruptly rested the defense without giving himself a 
continued opportunity to call the alibi witnesses for which subpoenas had 
issued. It is well settled that a single egregious error of omission or 
commission by counsel may constitute ineffective assistance. See Ex 
parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991) (ruling failure to 
challenge a void prior conviction used to enhance punishment range rendered 
counsel ineffective); but see Melancon v. State, 66 S.W.3d 375, 379 (Tex. 
App.—Houston [14th Dist.] 2000, no pet. h.) (holding record insufficient to 
establish that counsel’s failure to subpoena alibi witness and secure her 
testimony at trial constituted ineffective assistance of counsel where witness 
did not testify at motion for new trial hearing).
        Accordingly, 
we hold that counsel’s single omission, the failure to move for a continuance 
to secure the testimony of alibi witnesses, deprived Jones of a fair trial; that 
is, a trial whose result is reliable. See Strickland, 466 U.S. at 694, 
104 S.Ct. at 2068; Butler, 716 S.W.2d at 56 (holding that when no 
physical evidence linked defendant to crime and conviction rested solely on 
testimony of the complainant, the failure to investigate and call two witnesses 
who would say defendant was not the robber and one alibi witness was sufficient 
to undermine confidence in the outcome of the trial); Shelton, 841 S.W.2d 
at 527 (holding counsel’s failure to call alibi witness, thereby failing to 
advance one available defense, satisfied second prong of Strickland). 
There is a “reasonable probability,” that is, a probability sufficient to 
undermine confidence in the outcome, that the result of the proceeding would 
have been different but for counsel’s unprofessional error. Mallett, 
No. 01-41-055, slip op. at 3, 2001 WL 1621938 at * 1. Based on the record from 
Jones’s motion for new trial hearing, Jones satisfied the Strickland 
test, and the trial court abused its discretion by denying his motion for new 
trial. We sustain Jones’s second and third issues.
VI. The 
Extraneous Use of Brooks’s Credit Card
        In 
his first issue, Jones argues that the trial court erred in admitting, during 
the guilt/innocence phase of the trial, evidence regarding the extraneous 
offense of his use of Brooks’s credit card at Just For Feet. Prior to trial, 
the court granted Jones’s motion in limine to exclude all evidence relating to 
his illegal use of Brooks’s credit card. The State violated this limine order 
during its opening statement by referring to Jones’s use of the stolen credit 
card at Just For Feet. Jones objected, and moved for a mistrial.
        The 
trial court conducted a hearing outside the presence of the jury to revisit the 
limine issue concerning this evidence. At the hearing, the State contended that 
evidence of Jones’s credit card abuse was admissible to identify Jones as one 
of Brooks’s robbers. Jones responded by arguing that his use of Brooks’s 
credit card could not be offered as proof that he was responsible for stealing 
the card absent a showing that the credit card used by Jones was in fact a 
credit card stolen in the robbery. When asked by the court if Brooks would 
testify at trial that the credit card used by Jones at Just For Feet was a 
credit card stolen from him during the robbery as opposed to one that had been 
“lost,” the State replied, “Yeah, he will say that.” Accordingly, the 
court reversed its initial limine ruling and denied Jones’s motion for limine 
concerning the illegal use of Brooks’s credit card. The court admonished 
counsel, however, that if the State did not establish that the credit card used 
by Jones was one stolen in the robbery, “that Motion for Mistrial is just 
about three words away.”
        At 
trial, Lakesha Houston testified that she observed Jones pay for approximately 
$500 worth of goods at Just For Feet with Brooks’s credit card. Jones did not 
object to this testimony. Nor did Jones object when Brooks failed to testify 
that the credit card used by Jones was a credit card stolen in the robbery. The 
State presented no evidence at trial that connected Jones’s use of Brooks’s 
credit card with any card that purportedly had been stolen on the night of the 
robbery. Nevertheless, Jones did not object or move for a mistrial.
        The 
denial of a motion in limine is not sufficient to preserve error for review; 
there must be a proper objection to the proffered evidence. Tex. R. App. P. 33.1(a); McDuff v. 
State, 939 S.W.2d 607, 618 (Tex. Crim. App.), cert. denied, 522 U.S. 
844 (1997); Graham v. State, 3 S.W.3d 272, 276 (Tex. App.—Fort Worth 
1999, pet. ref’d). Because Jones did not object or move for a mistrial when 
the extraneous offense evidence was offered, this issue is not preserved for our 
review. McDuff, 939 S.W.2d at 618; Graham, 3 S.W.3d at 276. We 
overrule Jones’s first issue.
VII. Conclusion
        Having 
sustained Jones’s second and third issues, we reverse the trial court’s 
judgment and remand for a new trial.

  
                                                          SUE 
WALKER
                                                          JUSTICE

 
PANEL 
B:   DAUPHINOT, HOLMAN, and WALKER, JJ.
 
                DO 
NOT PUBLISH
                Tex. R. App. P. 47.3(a)
[Delivered 
March 28, 2002]
 


NOTES
     OPINION 
ON REMAND NOTES
1.  
Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 
(1984).
 
    
" APPENDIX A" NOTES
2.  
The record before us inconsistently refers to this witness as Debra Wood and 
Debra Woods. For purposes of this opinion, we refer to her as Debra Woods.
3.  
Jones also argues that his trial counsel was ineffective at punishment because 
he failed to obtain Jones’s work records to show that Jones was at work at the 
time another unindicted pizza-delivery-robbery extraneous offense occurred. The 
State called the victim of this robbery to testify at punishment. Because we 
hold that trial counsel’s decision to forego Jones’s alibi defense was below 
the standard of professional norms and undermined the reliability of the 
jury’s verdict, we do not address this issue.
4.  
Jones was out on bond at that time.
5.  
Trial counsel testified that, “Well, we had been on the trial docket, and I 
think that at least a month prior to the docket appearance we had a good idea 
that we might be reached.”
6.  
The State’s brief summed up the case:
 
The 
case here was not overwhelming. The victim was accosted on a dark street at 
night and robbed of his wallet containing credit cards. There was no one present 
other than the victim and the two robbers. Nothing to lift fingerprints off of 
and no weapon or property recovered.
  
7.  
The Strickland Court explained:
  
[S]trategic 
choices made after through investigation of law and facts relevant to plausible 
options are virtually unchallengeable; and strategic choices made after less 
than complete investigation are reasonable precisely to the extent that 
reasonable professional judgments support the limitations on investigation. In 
other words, counsel has a duty to make reasonable investigations or to make a 
reasonable decision that makes particular investigations unnecessary. In any 
ineffectiveness case, a particular decision not to investigate must be directly 
assessed for reasonableness in all the circumstances, applying a heavy measure 
of deference to counsel’s judgments.
Strickland, 
486 U.S. at 690-91, 104 S.Ct at 2066.